**NOT YET SCHEDULED FOR ORAL ARGUMENT -
CASE BEING CONSIDERED FOR TREATMENT PURSUANT TO RULE
34(j) OF THE COURT'S RULES**

# United States Court of Appeals
# for the District of Columbia Circuit

### No. 22-7131

STEPHEN OLLAR; MIRIAM BERMAN,

*Plaintiffs-Appellants,*

*v.*

DISTRICT OF COLUMBIA; CHANELLE REDDRICK; BROOKE
BEANDER; LYNSEY NIX; NORRELL ATKINSON,

*Defendants-Appellees.*

*On Appeal from the United States District Court
for the District of Columbia in No. 1:19-cv-01847-FYP.*

## BRIEF FOR DEFENDANT-APPELLEE
## NORRELL ATKINSON, M.D.

JODI V. TERRANOVA
WILSON ELSER MOSKOWITZ EDELMAN
   & DICKER LLP
1500 K Street, NW Suite 330
Washington DC 20005
Tel.: (202) 626-7660
Fax: (202) 628-3606
jodi.terranova@wilsonelser.com

*Counsel for Defendant-Appellee
   Norrell Atkinson, M.D.*

March 9, 2023

## <u>CERTIFICATE AS TO PARTIES,<br>RULINGS, AND RELATED CASES</u>

Pursuant to D. C. Circuit Rule 28(a)(1), counsel for Defendant, Norrell Atkinson, M.D., hereby certifies:

**I.** **Parties:** Plaintiffs below were Stephen Ollar and Miriam Berman. All Plaintiffs are Appellants before this Court. Defendants below were the District of Columbia, Brooke Beander, Lynsey Nix, Esq., Chanelle Reddrick, and Norrell Atkinson, M.D. All Defendants are Appellees before this Court.

**II.** **Amici:** There are no *amici*.

**III.** **Intervenors:** There are no intervenors in this case.

**IV.** **Ruling Under Review:** (1) the Memorandum Opinion and Order of the United States District Court for the District of Columbia, per the Hon. Florence Y. Pan (Dist. Ct. Dkt. 52 and 53), entered February 10, 2022, granting Defendants' respective Motions to Dismiss, 2022 U.S. Dist. LEXIS 24293, 2022 WL 407144 (D.D.C. Feb. 10, 2022); and (2) the District Court's Memorandum Opinion and Order denying Plaintiffs' Motion for Reconsideration (Dist. Ct. Dkt. 62 and 63) entered September 8, 2022*,* Civ. No.: 19-1847 (FYP), 2022 U.S. Dist. LEXIS 162333, 2022 WL 4103972 (D.D.C. Sep. 8, 2022).

**V.      Related Cases:**  There are no other cases involving the same parties or causes of action. However, the facts that underlie the allegations contained within Plaintiffs' Amended Complaint are substantially the same as a Family Court proceeding in the Superior Court for the District of Columbia (2016 NEG 204) and its subsequent appeal to the District of Columbia Court of Appeals (17-FS-0444). Defendants were not parties to the underlying Family Court proceeding. Dr. Atkinson was a witness in the underlying Family Court proceeding. Plaintiffs were parties to the underlying Family Court proceeding.

March 9, 2023                              */s/  Jodi V. Terranova*
                                        Jodi V. Terranova, Esq.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

TABLE OF CONTENTS.......................................................... iii

TABLE OF AUTHORITIES ......................................................v

GLOSSARY OF ABBREVIATIONS ......................................................ix

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................2

STATEMENT OF PERTINENT STATUTES AND REGULATIONS...................3

STATEMENT OF THE CASE........................................................4

    D.O. arrives to the hospital with skull and arm fractures.............................4

    Dr. Atkinson evaluates the cause of D.O.'s skull fractures............................5

    D.O. is removed from Plaintiffs' custody ........................................5

    The D.C. Superior Court finds Plaintiffs abused their child .........................6

    The D.C. Court of Appeals affirms Plaintiffs abused their child...................7

    Plaintiffs initiate the instant case against Defendants .....................9

    Plaintiffs' allegations against Dr. Atkinson.................................11

SUMMARY OF THE ARGUMENT .....................................................14

ARGUMENT ........................................................18

    I.     STANDARD OF REVIEW ................................................18

    II.    THE DISTRICT COURT PROPERLY APPLIED THE APPROPRIATE STANDARD OF REVIEW TO THE FACTS AND FOUND THAT PLAINTIFFS' CLAIMS WERE BARRED BY THE DOCTRINE OF ISSUE PRECLUSION ......................................................20

III.   THE DISTRICT COURT APPROPRIATELY CONSIDERED THE FACTUAL ALLEGATIONS MADE BY PLAINTIFFS AND DID NOT CONSIDER ONLY AN OVERGENERALIZED STATEMENT OF THE CLAIMS ..............25

IV.   REGARDLESS OF WHETHER THE DOCTRINE OF COLLATERAL ESTOPPEL APPLIES, PLAINTIFFS' 42 U.S.C. § 1983 CLAIMS AGAINST DR. ATKINSON ARE BARRED ...........................................................................................31

V.    ASSUMING *ARGUENDO* DR. ATKINSON WAS A PUBLIC ACTOR, SHE WOULD BE IMMUNE FROM LIABILITY PURSUANT TO THE DOCTRINE OF QUALIFIED IMMUNITY ...............................................................34

VI.   DR. ATKINSON IS IMMUNE FROM LIABILITY AS A MANDATORY REPORTER OF SUSPECTED CHILD ABUSE OR NEGLECT ...................................................................37

CONCLUSION ....................................................................................................42

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abhe v. Svoboda, Inc. v. Chao,*
    508 F. 3d 1052, 378 U.S. App. D.C. 355 (D.C. Cir. 2007)...........................18

*Anderson v. Creighton,*
    483 U.S. 635 (1987).......................................................................................36

*Atherton v. Dist. of Columbia Office of the Mayor,*
    567 F.3d 672 (D.C. Cir. 2009).......................................................................18

*Banneker Ventures, LLC v. Graham,*
    798 F.3d 1119 (D.C. Cir. 2015).....................................................................18

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,*
    531 U.S. 288 (2001).......................................................................................32

*Brewer v. Hayne,*
    860 F.3d 819 (5th Cir. 2017) ........................................................................35

*\*Bryant-Bruce v. Vanderbilt University, Inc.,*
    974 F. Supp. 1127 (M.D. Tenn. 1997) ..........................................................32

*Carr v. Rose,*
    701 A.2d 1065 (D.C. 1997) ...........................................................................23

*Carswell v. Camp,*
    37 F.4th 1062 (5th Cir. 2022) ........................................................................36

*Cooper v. Jackson,*
    941 F. Supp. 2d 75 (D.D.C. 2013).................................................................18

*Covad Comms. Co. v. Bell Atl. Corp.,*
    407 F.3d 1220 (D.C. Cir. 2005).....................................................................21

*\*Deeths v. Lucile Slater Packard Children's Hosp. at Stanford,*
    2013 U.S. Dist. LEXIS 107747 (E.D. Cal. July 31, 2013)...........................33

*Drake v. McNair,*
    993 A.2d 607 (D.C. 2010) .............................................................................21

*\*Filarsky v. Delia,*
    566 U.S. 377 (2012).......................................................................................35

*Franco v. District of Columbia*,
　　3 A.3d 300 (D.C. 2010) ...................................................................22

*Haddon v. Walters*,
　　43 F.3d 1488 (D.C. Cir. 1995)...........................................................19

*Harvey v. Mohammed*,
　　841 F. Supp. 2d 164 (D.D.C. 2012)..................................................32

*Herbert v. Nat'l Acad. of Sci.*,
　　974 F.2d 192 (D.C. Cir. 1992)..................................................18, 19

*Hogue v. Hopper*,
　　728 A.2d 611 (D.C. 1999) ........................................................ 22-23

*IMAPizza, LLC v. At Pizza, Ltd.*,
　　965 F.3d 871 (D.C. Cir. 2020)..........................................................18

*Jenkins v. Washington Convention Ctr.*,
　　236 F.3d 6 (D.C. Cir. 2001)..............................................................19

*Kamit Inst. for Magnificent Achievers v. D.C. Pub. Charter Sch. Bd.*,
　　55 A.3d 894 (D.C. 2012) ...................................................................24

*Kurtz v. Hansell*,
　　2021 U.S. Dist. LEXIS 56037 (S.D.N.Y. Mar. 24, 2021)..............32

*Martin v. Dep't of Justice*,
　　488 F.3d 446, 376 U.S. App. D.C. 293 (D.C. Cir. 2007)...............22

*Meadows v. Rockford Housing Authority*,
　　861 F.3d 672 (7th Cir. 2017) ............................................................35

*Mitchell v. Forsyth*,
　　472 U.S. 511 (1985)..........................................................................36

*Pearson v. Callahan*,
　　555 U.S. 223 (2009)..........................................................................36

*Proctor v. District of Columbia*,
　　74 F. Supp. 3d 436 (D.D.C. 2014)...................................................22

*Richardson v. McKnight*,
　　521 U.S. 399 (1997)..........................................................................35

*Salas v. Carpenter*,
　　980 F.2d 299 (5th Cir. 1992) ............................................................36

*Saucier v. Katz,*
    533 U.S. 194 (2001)....................................................................36

*Simms v. District of Columbia,*
    699 F. Supp. 2d 217 (D.D.C. 2010)..............................................31

*\*Stewart v. Nat'l Educ. Ass'n,*
    471 F.3d 169 (D.C. Cir. 2006)......................................................21

*United States ex rel. Settlemire v. District of Columbia,*
    198 F.3d 913 (D.C. Cir. 1999)......................................................19

*West v. Atkins,*
    487 U.S. 42, 108 S. Ct. 2250 (1988) ............................................31

*Whittaker v. Court Servs. & Offender Supervision Agency for the D.C.,*
    401 F. Supp. 3d 170 (D.D.C. 2019)..............................................19

*Wise v. Glickman,*
    257 F. Supp. 2d 123 (D.D.C. 2003)..............................................21

*Wright v. Foreign Serv. Grievance Bd.,*
    503 F. Supp. 2d 163 (D.D.C. 2007)..............................................19

*Wyatt v. Cole,*
    504 U.S. 158 (1992)......................................................................35

*Zarnow v. City of Wichita Falls, Tex.,*
    500 F.3d 401 (5th Cir. 2007) ........................................................37

**Statutes & Other Authorities:**

U.S. Const., Amend. V ........................................................................26, 27

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ......................................................................................1

28 U.S.C. § 1367 ......................................................................................1

42 U.S.C. § 1983 .............................................. 2, 10, 14, 15, 31, 32, 33, 34

D.C. Code § 4-1301.01 ...........................................................................38

D.C. Code § 4-1321.01 ...........................................................................38

*D.C. Code § 4-1321.02(a)...........................................15, 16, 38, 39, 40

*D.C. Code § 4-1321.02(b)................................................16, 38, 40

*D.C. Code § 4-1321.04 ................................. 2, 14, 16, 17, 38, 40, 41, 42

D.C. Code § 16-2301(9)(A)(i) ..................................................3, 7

D.C. Code § 16-2301(9)(A)(ii) .................................................3, 7

D.C. Code § 16-2301(9)(A)(vi) ...............................................3, 39

Fed. R. App. P. 4(a)(1)(A) .......................................................1

Fed. R. Civ. P. 12(b)(1)........................................................18, 19

Fed. R. Civ. P. 12(b)(6)........................................................18, 21

## <u>GLOSSARY OF ABBREVIATIONS</u>

| Abbreviation | Term |
| --- | --- |
| **1.** DC CFSA | District of Columbia Child and Family Services Agency. |
| **2.** D.O. | Plaintiffs' minor daughter – name is redacted for privacy. |
| **3.** Sibley | Sibley Memorial Hospital. |
| **4.** Children's Hospital | Children's National Medical Center. |
| **5.** D.C. Defendants | District of Columbia, Chanelle Reddrick, Brooke Beander, and Lynsey Nix. |

## JURISDICTIONAL STATEMENT

I.        **The District Court's jurisdiction:** The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §1331, because Plaintiffs allege causes of action sounding in violations of their respective constitutional rights. JA 1. The District Court had subject matter jurisdiction over Plaintiffs remaining causes of action pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy.

II.       **Appellate Jurisdiction:** This Court has jurisdiction pursuant to 28 U.S.C. §1291. The District Court entered its final order and judgment disposing of all Plaintiffs' claims on February 10, 2022. (Dist. Ct. Dkt. 52 and 53). Plaintiffs then filed a Motion for Reconsideration, which was denied on September 8, 2022. (Dist. Ct. Dkt. 62 and 63). Defendants filed their notice of appeal on October 2, 2022, within 30 days of the September 8, 2022 order as required by Fed. R. App. P. 4(a)(1)(A). (ECF Doc. No. 64).

III.      **Timeliness of The Appeal:** This appeal is timely, because Plaintiffs' Notice of Appeal was filed on October 4, 2022.

IV.       **Finality of Underlying Judgment:** This is an appeal from a final order that disposes of all of Plaintiff-Appellant's claims.

1

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.      Whether the District Court appropriately granted Dr. Atkinson's Motion to Dismiss on the basis of issue preclusion, when Plaintiffs' causes of action in the instant matter were predicated on allegations that the underlying child-abuse investigations and proceedings were baseless, but the charges of abuse and neglect were conclusively resolved against Plaintiffs in the proceedings before the D.C. Superior Court and the D.C. Court of Appeals.

II.      Whether the District Court appropriately concluded that Dr. Atkinson, as a private citizen employed by a private hospital, was a private actor, and therefore, was not subject to liability pursuant to 42 U.S.C. § 1983.

III.      Whether the District Court appropriately granted Dr. Atkinson's Motion to Dismiss on the basis of statutory immunity pursuant to D.C. Code § 4-1321.04, when Dr. Atkinson is a board certified pediatrician with a subspecialty in child abuse pediatrics and a mandatory reporter, and the D.C. Superior Court and the D.C. Court of Appeals found that her findings and testimony were credible and substantiated.

2

## STATEMENT OF PERTINENT STATUTES AND REGULATIONS

Except for the following, all applicable statutes are referenced in Appellants'

Brief. Excerpts of below-referenced statute are reproduced in Appellee-Norrell

Atkinson's Statutory Addendum.

1. D.C. Code § 16-2301(9)(A)(i);

2. D.C. Code § 16-2301(9)(A)(ii); &

3. D.C. Code § 16-2301(9)(A)(vi).

**STATEMENT OF THE CASE**

At the outset, prior to addressing what this matter does concern, given Plaintiffs' brief, it is critical to note what this matter does not concern. The instant matter does **not** concern a sick child as analogized by Plaintiffs. *See* Plaintiffs' Br. at p. 1 n.1. Nor does this matter concern an apparently clandestine operation by a cabal of malevolently motivated social workers to remove children from their picturesque familial homes, as also suggested by Plaintiffs. *Id.* It further does not concern police raids in the night or extrajudicial killings of marginalized members of our communities. *Id.* at 13. Instead, this case involves two individuals, Stephen P. Ollar ("Ollar") and Miriam L. Berman ("Berman") (collectively "Plaintiffs"), who were found to have abused and neglected their child and the District of Columbia judicial system's determination that it was appropriate to remove Plaintiffs' child ("D.O.") from their custody. JA 3-17, 83-92. Dr. Atkinson accordingly submits the following Statement of the Case in order to set the record straight.

**D.O. arrives to the hospital with skull and arm fractures.**

On June 24, 2016, Plaintiffs took their six-week old minor child, D.O., to Sibley Memorial Hospital ("Sibley"). JA 3-4, 84. D.O. was admitted to Sibley for skull and left arm fractures that Plaintiffs alleged were sustained as a result of an accidental fall. JA 3-4, 85. Due to the nature of D.O.'s injuries, it was decided that

she should be transferred to Children's National Medical Center ("Children's Hospital") for further care and evaluation. The matter was referred to District of Columbia Child and Family Services Agency ("DC CFSA"). JA 2-3, 84-85.

**Dr. Atkinson evaluates the cause of D.O.'s skull fractures.**

Subsequent to the transfer, a DC CFSA social worker, Chanelle Reddrick, was assigned to investigate Plaintiffs for possible child abuse. JA 2-3, 85. During the course of Reddrick's investigation, she requested child abuse pediatrician, Dr. Atkinson, conduct a review and analysis of D.O.'s injuries for the purposes of assessing whether they could have been caused by parental abuse or neglect. JA 5-6, 85. Consequently, Dr. Atkinson conducted an investigation as to the cause of D.O.'s injuries. This investigation included interviews of Plaintiffs, physically examining D.O., and reviewed a number of imaging scans. JA 5-6, 8, 85. This information was then conveyed to the relevant authorities. JA 85, 86.

**D.O. is removed from Plaintiffs' custody.**

On June 29, 2016, DC CFSA removed D.O. from the custody and care of Plaintiffs. JA 8, 85. The reasons for D.O.'s removal were two fold. First, there was medical evidence that indicated D.O. was being abused. Second, Plaintiffs' refused to cooperate with DC CFSA's investigation into the matter. JA 85. On July 1, 2016, the D.C. Government filed a neglect petition on behalf of D.O. The petition alleged

D.O. had been abused by her parents and that she had been "without proper parental care." JA 11, 85.

### The D.C. Superior Court finds Plaintiffs abused their child.

The next day, a D.C. Superior Court judge held an initial probable cause hearing concerning the allegations. JA 11, 85. The judge found that there was probable cause to substantiate the allegations contained within the D.C. Government's petition. JA 12, 85.

On October 4, 2016, a D.C. Superior Court magistrate judge commenced a fifteen-day trial to assess the veracity of the D.C. Government's neglect petition. JA 86. At this proceeding, the D.C. Government presented expert testimony from the three doctors who had examined D.O. at Children's Hospital - Xian Zhao, MD, an emergency room physician; Eglal Shalaby-Rabin, MD, a pediatric radiologist; and Dr. Atkinson. JA 14-15, 86-88. Each of these physicians testified that D.O.'s injuries were inconsistent with Plaintiffs' allegations of what had happened to her. JA 14-15, 86-88. Specifically, Dr. Atkinson "testified to a reasonable degree of medical certainty that the fractures to D.O.'s skull were the result of significant blunt force trauma to the head." JA 86. Similarly, Drs. Zhao and Shalaby-Rana testified, that D.O.'s arm injuries were not consistent with a fall, as was alleged by Plaintiffs. JA 86.

6

In rebuttal to the District's case against them, Plaintiffs elicited the testimony of five experts on the issue of causation. JA 15. None of these experts examined D.O. JA 86. Nor had these experts examined D.O.'s injuries. JA86. Nonetheless, they still testified that D.O.'s injuries could have occurred as a result of Plaintiffs' recitation of the facts. JA 15. After reviewing all of the evidence, listening to all of the testimony, and weighing the credibility of the same, the magistrate judge found that D.O. was a neglected and abused child. JA 86-88. Specifically, the magistrate judge found that Plaintiffs abused D.O. (pursuant to D.C. Code § 16-2301(9)(A)(i)) and neglected her (pursuant to D.C. Code § 16-2301(9)(A)(ii)). JA 87.

Following an adverse decision on the merits, Plaintiffs appealed the ruling of the magistrate judge to an associate judge of the Superior Court for the District of Columbia. JA 87. In summarily affirming the magistrate judge's decision, the associate judge concluded, Plaintiffs did not provide a satisfactory explanation for D.O.'s injuries, and that the magistrate judge did not abuse her discretion in discrediting their – and their experts' – testimony. JA87-88.

**The D.C. Court of Appeals affirms Plaintiffs abused their child.**

Subsequent to this decision, Plaintiffs appealed the matter to the D.C. Court of Appeals. JA 88. In their Appeal, Plaintiffs argued, "the Defendants['] use of fabricated evidence and perjured testimony encroached on several due process

issues, including notice, standing, jurisdiction, and fairness/prejudice." JA 17. Plaintiffs further, "publicly argued before the D.C. Court of Appeals" that their constitutional rights were violated. JA 17.

In a decision dated August 23, 2019, the D.C. Court of Appeals affirmed the magistrate judge's ruling in total. JA 83. Specifically, the D.C. Court of Appeals found that there was no merit to Plaintiffs' contentions that the magistrate judge had erred by: (1) concluding D.O.'s injuries were unexplained; (2) discrediting the testimony of both Plaintiffs and their expert witnesses; and/or (3) concluding Plaintiffs neglected D.O. JA 90-92.

In affirming the prior rulings, the D.C. Court of Appeals concluded that the magistrate judge appropriately discounted the testimony of Plaintiffs for four reasons. JA 89. First, Ollar lied about being an attorney, when he was, in fact, only a law school graduate. JA 89. Second, Ollar testified that he could not bring himself to inform Berman of what occurred on the night in question. JA 89. This was despite his medical training from the military, which included knowledge of the criticalness of head traumas. JA 89. Third, Berman did not investigate what occurred on the night in question, nor did she initially inform D.O.'s daycare about what had occurred. JA 89. Finally, both Plaintiffs refused to provide information to Dr. Atkinson during her interview of them. JA 89.

Concerning the expert testimony, the D.C. Court of Appeals found that the magistrate judge appropriately weighed and considered the testimony of both the District Government's experts and that of Plaintiffs' experts. JA 90-91. In affirming the magistrate judge's decision to rely on the District Government's experts and discredit the opinions of Plaintiffs, the D.C. Court of Appeals relied on multiple citations to the record made by the magistrate judge, where she demonstrated multiple opinions and conclusions, where Plaintiffs' "experts' testimony contradicted each other." JA 90. The D.C. Court of Appeals concluded that this reflected a magistrate judge who "heard both sides' experts" and credited the appropriate side's experts. JA 90. Accordingly, the D.C. Court of Appeals affirmed the magistrate judge's balancing of the testimony and evidence as a "well-reasoned" choice. JA 90.

Given the foregoing, the D.C. Court of Appeals held, that it would not "second guess" the conclusions reached by the Magistrate Judge and affirmed – in total – the holdings of the magistrate judge. JA 90. This included findings that Plaintiffs abused and neglected D.O. JA 90.

**Plaintiffs initiate the instant case against Defendants.**

On June 24, 2019, Plaintiffs initiated the instant case (the "Action") against Defendants. JA 47. All Defendants filed Motions to Dismiss. Following these

Motions, Plaintiffs filed a Motion to Amend their Complaint, which was ultimately granted. Plaintiffs then filed an Amended Complaint. JA 47.

In their Amended Complaint, Plaintiffs alleged the District of Columbia, Chanelle Reddrick, Brooke Beander, Lynsey Nix (collectively the "D.C. Defendants"), and Dr. Atkinson violated their Constitutional and civil rights under 42 USC § 1983 (Count I), and are liable for negligence (Count II), abuse of process (Count III), intentional infliction of emotional distress (Count IV), negligent infliction of emotional distress (Count V), negligent training, supervision, and retention (Count VI), and punitive damages (Count VII). Plaintiffs sought judgment against Dr. Atkinson for all Counts except for Count VI for negligent training, supervision, and retention. JA 47.

The Action's causes of action arise out of care and treatment provided to D.O. at Children's Hospital after her admission on June 25, 2016 for the aforementioned skull fractures. JA 1. Plaintiffs sought compensatory damages, punitive damages, and litigation expenses and costs based on "Defendants' unlawful, malicious, and willful physical abuse, seizure, and detention of Plaintiffs' six-week-old minor child and Defendants' subsequent conspiracy to conceal the unlawful conduct." JA 1.

**Plaintiffs' allegations against Dr. Atkinson.**

Plaintiffs filed this Action against Dr. Atkinson individually and in her capacity as an agent, servant, employee, and/or state actor of the District of Columbia. JA 3. Plaintiffs alleged the following in relation to Dr. Atkinson in their Statement of Facts:

- "At the purposeful direction of the District, Defendant Norrell Atkinson, a child abuse pediatrician, became a willful participant in joint action with the District, and, at all times mentioned herein, was exercising powers that were exclusively the prerogative of the State, namely the District's investigation." JA5-6.

- "On Monday, June 27, 2016, Defendant Atkinson arrived at D.O.'s private hospital room. Defendant Atkinson did not identify herself as a child abuse pediatrician or inform Plaintiffs she was performing the District's investigation. Defendant Atkinson asked Plaintiffs questions regarding D.O.'s injuries, her presentment at the hospital, her medical history, and the Plaintiffs' medical histories and family histories. Defendant Atkinson also requested to perform a physical examination of D.O. Plaintiffs cooperated with Defendant Atkinson's requests." JA 6.

- Following Dr. Atkinson's examination, several nurses performed a "battery of blood tests on D.O." Plaintiffs later learned that Defendant Atkinson "had ordered the medically unnecessary test solely to further the District's investigation." JA 6.

- D.O. was scheduled for a brain MRI and, unbeknownst to Plaintiffs, Dr. Atkinson ordered an expanded MRI to include her neck and spine "to look for non-existent evidence of shaken baby syndrome." "[A]n ophthalmologist had examined D.O.'s eyes the previous day and detected no evidence of retinal hemorrhages, which are considered one of the primary indicators of shaken baby syndrome and traumatic head abuse.

11

Defendant Atkinson was aware of this fact when she needlessly expanded the MRI." JA 6.

- "Plaintiffs were not informed of the additional time and risk involved and did not consent to the expanded MRI, which was undertaken solely for investigative purposes at the behest of the District." The anesthetist terminated the MRI after the brain and neck were imaged because it was too dangerous to keep D.O. sedated. "Undeterred, Defendant Atkinson ordered a medically unnecessary second MRI to be performed the following day of the spine alone." JA 7.

- Plaintiffs were misled as to the purpose of the tests – they were told that it was to ensure D.O. did not sustain a neck injury that would make feeding problematic. Dr. Atkinson was responsible for depriving D.O. of nutrition for nearly 72 hours due to scheduled and unnecessary diagnostic imaging tests.

- On June 27th, Plaintiffs first became aware that the tests were not medically necessary, but were to further an "investigation." After Dr. Atkinson conceded that she ordered the blood tests, Plaintiffs informed Dr. Atkinson that she committed a "battery" and that they wanted "communication" prior to any further testing. JA 7.

- Dr. Atkinson informed Defendant Reddrick that she had been accused of committing a battery. Despite a lack of evidence of abuse, Dr. Atkinson and Defendant Reddrick agreed to remove Plaintiffs from the hospital. JA 8.

- Defendants attempted to justify the seizure by falsely claiming that Plaintiffs were uncooperative with the investigation. JA 8.

- Following Plaintiffs' removal, and in their absence and without their consent, Dr. Atkinson "brazenly continued to perform abusive, unlawful, and medically unnecessary procedures on D.O.," including a second MRI of her spine. Plaintiffs also allege that Plaintiff Berman's signature was forged on the medical authorization for the anesthetic for the second MRI. JA 9.

12

- Dr. Atkinson "conspired to fabricate evidence of 'not medically possible' injuries" by fabricating a second injury in D.O.'s shoulder weeks after D.O.'s removal. Plaintiffs also imply that Dr. Atkinson asked the radiologist to amend her report to include the allegation of an additional injury, but the radiologist refused. JA 13.

- Plaintiffs allege that Defendants gave false representations to the Family Court and withheld and destroyed evidence. JA 13-14.

- Dr. Atkinson testified at the neglect trial that D.O.'s injuries were possible from a single impact to the back of the head as described by Plaintiffs. Dr. Atkinson's testimony was the "crux" of the District's case. Specifically, Dr. Atkinson initially testified that "[t]he fractures to [D.O.'s] skull are the result of significant impact trauma to the head," and she subsequently testified that D.O.'s head injuries "are the result of blunt force impact to her head." Dr. Atkinson further testified that skull fractures are always "the result of some type of blunt force trauma to the skull" and that "any type of impact to the head is blunt force." Finally, Dr. Atkinson testified that she had "concerns about the degree of injury that [she was] seeing with the fall as described." JA 15.

- Plaintiffs allege that Defendants used fabricated evidence and perjured testimony. JA 17.

Subsequent to the filing of Plaintiffs' Amended Complaint, the D.C. Defendants and Dr. Atkinson respectively filed Second Motions to Dismiss. JA 38. On February 10, 2022, the District Court below issued an extensive and well-reasoned 24 page Memorandum Opinion and Order dismissing Plaintiffs' Amended Complaint with prejudice. The District Court below dismissed Plaintiffs' Amended Complaint, because "Plaintiffs' myriad claims are barred — both by the doctrine of

issue preclusion, which forecloses relitigation of issues already determined by courts of competent jurisdiction; and by the absolute and statutory immunity enjoyed by government employees and professionals who take part in neglect proceedings." JA 38-61.

Plaintiffs then filed a Motion to Reargue. JA 62. In its decision of September 8, 2022, the District Court below rejected Plaintiffs' arguments and reiterated its findings of law. JA 62-82. This appeal ensued.

## SUMMARY OF THE ARGUMENT

The District Court properly dismissed the Action against Dr. Atkinson on three grounds: first, the Court found that Plaintiffs' claims were barred by the doctrine of issue preclusion; second, the Court concluded that Dr. Atkinson was not a state actor, and therefore, was not subject to liability pursuant to Section 1983; and third, the Court found that Plaintiffs' claims against Dr. Atkinson were barred by D.C. Code § 4-1321.04. JA 68-69, 81.

Concerning the doctrine of issue preclusion, the District Court below correctly found that it barred Plaintiffs' claims, because the findings of the underlying child-abuse proceedings required the same. JA 69. Specifically, the District Court appropriately found that the Action must be dismissed because all the claims enumerated in Plaintiffs' Amended Complaint rely on the assumption and contention

14

that the factual findings underlying the child-abuse investigation and proceedings were unfounded and unsubstantiated. JA 77. However, to make such a finding would require the District Court to relitigate the operative facts of the underlying child-abuse investigation and proceedings. JA 77. As such relitigation is barred under the doctrine of issue preclusion, the District Court below appropriately dismissed the Action.

In regard to Plaintiffs' Section 1983 claims against Dr. Atkinson, the District Court appropriately found that Plaintiffs' claims must fail, because she is not a state actor subject to Section 1983 liability. In making such a determination, the Court relied upon three primary factors: first, Dr. Atkinson is a private citizen and is not a government employee; second, no governmental agency or actor controlled Dr. Atkinson's conduct to such an extent that it could be reasonably found to be state action; and finally, no governmental agency or actor funded Dr. Atkinson's actions. Given this, Plaintiffs' allegations fail to set forth any plausible cause of action against Dr. Atkinson sounding in Section 1983 liability.

Alternatively, even if the doctrine of issue preclusion did not require the dismissal of the Action, the District Court below properly concluded that Dr. Atkinson was provided statutory immunity that barred Plaintiffs' claims. JA 59-61. D.C. Code § 4-1321.02(a) states:

15

> Notwithstanding § 14-307, **any person** specified in subsection (b) of this section who knows or has reasonable cause to suspect that a child known to him or her in his or her professional or official capacity has been or is in immediate danger of being a mentally or physically abused or neglected child . . . shall immediately report or have a report made of such knowledge or suspicion to either the Metropolitan Police Department of the District of Columbia or the Child and Family Services Agency.

(Emphasis Added).

D.C. Code § 4-1321.02(b) states that the "[p]ersons required to report such abuse or neglect shall include Child and Family Services Agency employees, agents, and contractors, and **every physician** …." (Emphasis added). As Dr. Atkinson is a physician, and more specifically a child abuse pediatrician, she clearly qualifies as a mandatory reporter. As such, she was under obligation to report to the Metropolitan Police Department of the District of Columbia or the Child and Family Services Agency, whenever she has reason to believe or suspect a "…child known to [her] in [her] professional or official capacity has been or is in immediate danger of being a mentally or physically abused or neglected child…." D.C. Code § 4-1321.02(a).

As a mandatory reporter, Dr. Atkinson is afforded statutory immunity under D.C. Code § 4-1321.04, which states in pertinent part:

> Any person . . . participating in good faith in the making of a report [of suspected child abuse or neglect] shall have immunity from liability, civil or criminal, that might otherwise be incurred or imposed with respect to the making of the report. Any such participation shall have

16

the same immunity with respect to participation in any judicial proceeding involving the report. In all civil or criminal proceedings concerning the child or resulting from the report good faith shall be presumed unless rebutted.

Taken together, the law and the facts are clear: Plaintiffs did not – and could not – rebut the presumption of good faith afforded to Dr. Atkinson's actions as a mandatory reporter. This is because D.C. Code § 4-1321.04 affords a mandatory reporter – such as Dr. Atkinson – immunity even if his or her allegations are ultimately unsubstantiated by the evidence. However, as noted above, the magistrate judge in the underlying proceeding determined that Dr. Atkinson, as well as her actions and conclusions, were credible, reasonable, and supported by the evidence. JA 90. This decision was then affirmed twice on appeal. JA 92. As such, it was necessary for the District Court below to find that Dr. Atkinson had acted in good faith, and therefore, D.C. Code § 4-1321.04 afforded her statutory immunity from Plaintiffs' claims.

Given the foregoing, it is respectfully submitted that the District Court's dismissal of the Action was appropriate and should be affirmed.

17

## ARGUMENT

### I.    STANDARD OF REVIEW

A district court's granting of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is subject to *de novo* review. *IMAPizza, LLC v. At Pizza, Ltd*., 965 F.3d 871, 875 (D.C. Cir. 2020); *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1128 (D.C. Cir. 2015); *Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b) (6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim." *Cooper v. Jackson*, 941 F. Supp. 2d 75, 80 (D.D.C. 2013). The court must accept Plaintiffs' factual allegations as true, but it does not need to accept Plaintiffs' legal conclusions as true. *Id.* at 81. "In deciding a motion under Rule 12 (b) (6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice." *Id*. (citing *Abhe v. Svoboda, Inc. v. Chao*, 508 F. 3d 1052, 1059, 378 U.S. App. D.C. 355 (D.C. Cir. 2007)).

Similarly, this Court applies *de novo* review to the granting of motions to dismiss pursuant to Federal Rule of Civil Procedure 12 (b) (1). *Herbert v. Nat'l Acad. of Sci.,* 974 F.2d 192, 197 (D.C. Cir. 1992). "Although a court must accept as true

all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12 (b) (1), [a] plaintiff['s] factual allegations in the complaint…will bear closer scrutiny" in resolving a motion on these grounds. *Whittaker v. Court Servs. & Offender Supervision Agency for the D.C.*, 401 F. Supp. 3d 170, 177 (D.D.C. 2019) (quoting *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007)). Thus, a court may look to and consider supplemental undisputed facts evidenced in the record or the court's resolution of disputed facts. *Id*. On Appeal, the District Court's findings concerning factual issues must not be disturbed, unless they are clearly erroneous. *Herbert,* 974 F.2d at 198.

This Court may affirm on grounds different from those relied upon by the District Court. *See, e.g., Jenkins v. Washington Convention Ctr*., 236 F.3d 6, 8 n.3 (D.C. Cir. 2001); *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999) ("When the judgment of the court below is correct as a matter of law, we may affirm on different grounds.") (citing *Haddon v. Walters*, 43 F.3d 1488, 1491 (D.C. Cir. 1995)).

## II.     THE DISTRICT COURT PROPERLY APPLIED THE APPROPRIATE STANDARD OF REVIEW TO THE FACTS AND FOUND THAT PLAINTIFFS' CLAIMS WERE BARRED BY THE DOCTRINE OF ISSUE PRECLUSION.

Plaintiffs argue the District Court's decision should be overruled because it misapprehended the standard of review in assessing the Defendants' respective Motions to Dismiss. *See* Plaintiffs' Br. at p. 10. Specifically, Plaintiffs complain that the District Court below discounted the totality of Plaintiffs' allegations contained within their Amended Complaint and inappropriately drew conclusions from the underlying child-abuse proceedings. *Id.* at 11. Indeed, Plaintiffs argue that, the District Court below considered only a "single inaccurate generalization that Plaintiffs sought in the instant suit to overturn or relitigate the neglect action itself," when considering Defendants' respective Motions to Dismiss. *Id.*

Furthermore, Plaintiffs argue that while the District Court below could consider the opinions and findings of the D.C. Superior Court magistrate and associate judges, as well as those of the D.C. Court of Appeals, it could not apparently rely on such findings in making its determination to dismiss Plaintiffs' Amended Complaint. *Id.* at 12-13. Plaintiffs' contentions are meritless and without support in the law, facts of this case, or the record.

20

Although it is true that the District Court below was obligated to consider each of Plaintiffs' factual allegations as true, and construe them liberally in favor of Plaintiffs, the District Court's analysis could not simply end there. *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). Instead, the District Court below could have, should have, and did, take judicial notice of the D.C. Court of Appeals' decision affirming the Superior Court's (both magistrate's and associate's) decision that Plaintiffs abused and neglected their daughter, D.O. *Id.* (stating, "[i]n determining whether a complaint [may be dismissed pursuant to Rule 12(b)(6)], the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice."); *Covad Comms. Co. v. Bell Atl. Corp.,* 407 F.3d 1220, 1222 (D.C. Cir. 2005) (stating, "[a] court may take judicial notice of public records from other proceedings); *Drake v. McNair*, 993 A.2d 607, 616 (D.C. 2010) (stating, consideration of matters in public records, such as filings, briefs, and transcripts in another litigation, will not convert a motion to dismiss into a motion for summary judgment). "The court is allowed to take judicial notice of matters in the general public record, including … records of prior litigation without triggering the conversion requirement." *Wise v. Glickman*, 257 F. Supp. 2d 123, 129 n.5 (D.D.C. 2003) (internal quotations and citations omitted).

Taken together, the black letter law is clear: while it is true that the District Court below was required to accept Plaintiffs' factual allegations as true for the purposes of the Defendants' respective Motions to Dismiss, it was not required to simply ignore the prior procedural factual history that underlies this case. Indeed, such a contention stands in stark contrast to the doctrine of collateral estoppel.

"Collateral estoppel, or issue preclusion, prohibits the relitigation of factual or legal issues decided in a previous proceeding and essential to the prior judgment." *Franco v. District of Columbia*, 3 A.3d 300, 303-04 (D.C. 2010) (internal quotations and citations omitted). In order for a final judgement to preclude subsequent litigation of an issue, "[1], the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case[; 2] the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case[; and] [3] preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 450-51 (D.D.C. 2014) (quoting *Martin v. Dep't of Justice*, 488 F.3d 446, 454, 376 U.S. App. D.C. 293 (D.C. Cir. 2007)).

"If an issue has been actually decided in the earlier litigation, and if the other elements of the doctrine of collateral estoppel have been satisfied, the doctrine may be invoked defensively by one who was not a party to the prior case." *Hogue v.*

22

*Hopper*, 728 A.2d 611, 614 (D.C. 1999); *Carr v. Rose*, 701 A.2d 1065, 1076 (D.C. 1997) (holding, issue preclusion does not require the same parties; rather, a stranger to the first action may invoke issue preclusion against a party to that action, also known as "defensive non-mutual collateral estoppel."). Given the foregoing, it is axiomatic that in order to consider if an allegation made in a complaint has been previously litigated, the court must consider documents outside the four corners of the complaint. This is precisely what occurred in this case.

Pertinent to this appeal, Plaintiffs contend that, the District Court below did not appropriately accept as true the alleged facts in their Amended Complaint as they pertained to the:

> [S]ix acts by [committed by] Defendants that deprived Plaintiffs of their clearly established Constitutional rights: (1) performing medically unnecessary tests in violation of the Plaintiffs' right to make medical decisions on behalf of their minor daughter, (2) unlawfully seizing the Plaintiffs' daughter, (3) fabricating evidence to justify the unlawful seizure, (4) falsely swearing an affidavit supporting prolonged shelter care, (5) perjuring and suborning perjury at the shelter care hearing, and (6) destroying and withholding evidence of the past misconduct.

Plaintiffs' Br. at p. 10.

However, Plaintiffs' contentions make plain their misapprehension of the District Court's opinion dismissing their Amended Complaint. The District Court below did accept as true the allegations set forth in Plaintiffs' Amended Complaint.

23

JA 53. Nevertheless, to survive a motion to dismiss, Plaintiffs' Amended Complaint needed to "contain factual allegations that plausibly give rise to an entitlement to relief." *Kamit Inst. for Magnificent Achievers v. D.C. Pub. Charter Sch. Bd.*, 55 A.3d 894, 903 (D.C. 2012). In the present case, the District Court properly held that Plaintiffs could not make such a showing even accepting all of their allegations as true. JA 68-69.

As will be outlined in greater detail below, each of Plaintiffs' claims related to the above-referenced six tortious acts were previously addressed and fully litigated in the child-abuse and neglect proceeding that underlies this Action, and were reconsidered in both of Plaintiffs' subsequent appeals. JA 83-92. Indeed, it is unquestionable that the factual predicate for **<u>each</u>** of Plaintiffs' above-referenced claims is, in essence, that they did not abuse their child and that Defendants are liable to them for, in sum and substance, investigating the circumstances surrounding their child's skull and arm fractures. JA 1. It is nonsensical to suggest otherwise. Clearly, these issues were, or could have been, fully litigated in the underlying child-abuse and neglect proceeding. As such, a dismissal of Plaintiffs' complaint was warranted.

Given the foregoing, all three elements for the application of issue preclusion are satisfied, even if the District Court below only considered the overgeneralized statement of the claims as contended by Plaintiffs. While untrue, even an

24

overgeneralized statement of the claims would reflect that Plaintiffs' claims in this Action rise and fall with the same facts, issues, and contentions that were, or could have been, raised by Plaintiffs in the underlying neglect proceedings. Further, preclusion of Plaintiffs' current claims will certainly <u>not</u> work a basic unfairness to them as there has been a final judicial determination of neglect and abuse.

Therefore, the adverse rulings and opinions on these facts, issues, and contentions by the D.C. Superior Court magistrate and associate judges – as well as the D.C. Court of Appeals – bar Plaintiffs' claims in this Action. Thus, the District Court below appropriately considered Plaintiffs' allegations in their Amended Complaint, the facts and rulings of the underlying case, and appropriately determined that the Action should be dismissed pursuant to the doctrine of collateral estoppel. As such, it is respectfully submitted that this Court should affirm the District Court's ruling dismissing Plaintiffs' Amended Complaint.

## III. THE DISTRICT COURT APPROPRIATELY CONSIDERED THE FACTUAL ALLEGATIONS MADE BY PLAINTIFFS AND DID NOT CONSIDER ONLY AN OVERGENERALIZED STATEMENT OF THE CLAIMS.

As noted above, Plaintiffs contend that the District Court below considered only a "single inaccurate generalization" concerning the factual allegations made by them in their Amended Complaint. *See* Plaintiffs' Br. at p. 10. Such a statement is

wildly inaccurate and unsupported by the record. JA 69-77. Instead, as outlined below, the District Court's decision to dismiss Plaintiffs' Amended Complaint makes clear that it carefully considered each of their above-referenced six tortious acts that make up the instant Action. JA 69-77. Thus, Plaintiffs contentions' concerning the impropriety of the District Court's ruling is wholly without merit.

Concerning the first tortious act alleged by Plaintiffs, the propriety of the medical tests performed upon D.O., the District Court below fully and fairly addressed an analyzed this issue. JA 70-72. In considering this issue, the District Court correctly noted, "Plaintiffs cannot prevail on any Fifth Amendment claim related to the medical tests performed on D.O. unless Plaintiffs demonstrate that CFSA did not have probable cause to believe that D.O. was in imminent danger when the agency commenced the child-abuse investigation." JA 72. Plaintiffs have provided this Court with no contradictory case law regarding this issue.

Following this statement of law, the District Court below concluded that Plaintiffs were unable to make the required showing in this Action, because of the doctrine of collateral estoppel. JA 72. The District Court noted, the "Superior Court found at the initial [probable cause] hearing that there was, in fact, probable cause to believe that D.O. was neglected; and that [D.O.'s] placement in shelter care was necessary to protect her person." JA 72. Therefore, the District Court below opined

26

that Plaintiffs' Fifth Amendment claims must fail. JA 72. This was because, even with the District Court's acceptance of Plaintiffs' contentions as true, the question of whether there was probable cause to remove D.O. was conclusively decided against Plaintiffs at the probable cause hearing, trial, and subsequent appeal in the underlying child-abuse proceedings. JA 83-92. As such, the veracity of Plaintiffs' allegations is immaterial, because, as noted above, the doctrine of collateral estoppel bars relitigation on this issue.

A similar conclusion is compelled when analyzing Plaintiffs' second tortious act – Defendants unlawfully seized the Plaintiffs' daughter. Plaintiffs allege in the instant Action that Defendants engaged in tortious activity "when faced with actual or constructive knowledge that the removal lacked probable cause, exigent circumstances, or judicial authorization." JA 10. Once again, relying on the same finding, the District Court below correctly noted that such allegations were litigated when the "Superior Court, at the initial [probable cause] hearing, determined that there was, in fact, sufficient evidence of abuse from the initial investigation to meet the probable-cause standard, and found that removal of D.O. from Plaintiffs' care was justified to protect D.O." JA 75. Moreover, the issue of whether there was probable cause to remove D.O. from Plaintiffs' care was also fully and fairly litigated at the trial and subsequent appeal of the underlying child-abuse proceedings.

27

Therefore, it is unquestionable that the issue of whether there was probable cause to remove D.O. has been conclusively, and repeatedly, decided against Plaintiffs. JA 83-92. As such, the District Court appropriately dismissed Plaintiffs' Complaint.

Plaintiffs' third, fourth, and fifth allegedly tortious acts, all of which pertain to allegations that Defendants fabricated evidence, lied, and/or perjured themselves in the underlying child-abuse proceeding, were also properly considered by the District Court below. JA 75-77. As with Plaintiffs' other allegations, the District Court below considered the totality of the information available on these issues and not just an oversimplified and/or generalized recitation of what occurred. JA 77. Indeed, the District Court held,

> [The] DCCA considered Plaintiffs' arguments challenging the propriety of the probable cause hearing and found that they 'lack[ed] merit.' *See id.* Thus, Plaintiffs are precluded from relying on allegations of fabricated evidence, perjured testimony, or improprieties at the probable cause hearing here, even if they now purport to prove different legal theories, because those factual contentions have already been rejected in another judicial proceeding."

JA 76.

In point of fact, not only were Plaintiffs' contentions rejected, a significant reason for the underlying magistrate judge's opinion was the credibility of the parties and their respective witnesses. In her opinion, the magistrate judge explained that her ruling "rose and fell on whether [Plaintiffs'] explanation was credited; however,

28

she discredited [Plaintiffs'] testimony." JA 87. She further opined that, Plaintiffs' experts could not be believed because they did not examine D.O. or her injuries; instead, their testimony relied *solely* on Plaintiffs' account of what occurred on the night in question. JA 86-87.

This stood in stark contrast to the D.C. Government's experts and evidence (including Dr. Atkinson's testimony), which the Court found to be credible. JA 87. Given the foregoing, it is clear that the questions of whether allegations that Defendants fabricated evidence, lied, and/or perjured themselves in the underlying child-abuse proceeding were conclusively resolved at the trial and subsequent appeals of the underlying matter. JA 83-92. As such, any causes of action premised upon the same should have been, and were, dismissed pursuant to the doctrine of collateral estoppel.

Lastly, Plaintiffs contend that the District Court did not appropriately consider their alleged facts pertaining to their claim that they are entitled to damages because Defendants destroyed and withheld evidence during the underlying child-abuse proceedings. *See* Plaintiffs' Br. at p. 43. However, this averment too, as with Plaintiffs' other contentions, is false. In rejecting Plaintiffs' arguments on this issue, the District Court below opined and stated:

> As Plaintiffs recognize in their own Amended Complaint, they fully litigated their access to the District's evidence during the neglect proceedings. *See id.,* ¶¶ 39–40, 44–45. According to the Amended Complaint, 'Plaintiffs continually fought to obtain access to [Defendant Reddrick's notes] throughout the entire neglect proceeding and thereafter.' *See id.,* ¶ 39. When Plaintiffs filed their appellate brief with the DCCA, they included their allegations of due process violations. *See id.,* ¶ 45. Plaintiffs thus have already fully and fairly litigated, or have had the opportunity to litigate, the facts underlying their claim that they were entitled to evidence that was withheld or destroyed by Defendants. The DCCA rejected their arguments and affirmed the judgment against them in a valid, final judgment on the merits, which rested on the conclusion that they abused and neglected D.O.

JA 77.

Clearly, the District Court properly and thoroughly considered the facts and allegations on this issue and appropriately ruled that it had been adversely decided against Plaintiffs. Thus, the District Court correctly found that the doctrine of issue preclusion prevented Plaintiffs from relitigating this issue.

Given the foregoing, it is patently clear that the District Court below: 1) appropriately reviewed, considered, and analyzed all of the facts and allegations contained within Plaintiffs' Amended Complaint; 2) reviewed, considered, and analyzed the findings and conclusions of the D.C. Superior Court magistrate and associate judges as well as the ruling of the D.C. Court of Appeals; 3) applied those facts and allegations to the applicable law; and 4) correctly concluded that the

doctrine of collateral estoppel barred Plaintiffs' claims. Therefore, it is respectfully submitted that this Court should affirm the ruling of the District Court below.

## IV.    REGARDLESS OF WHETHER THE DOCTRINE OF COLLATERAL ESTOPPEL APPLIES, PLAINTIFFS' 42 U.S.C. § 1983 CLAIMS AGAINST DR. ATKINSON ARE BARRED.

As with Plaintiffs' other contentions, their analysis of the District Court's decision to dismiss their Section 1983 claims against Dr. Atkinson entirely miss the mark. Plaintiffs contend that their Section 1983 claims against Dr. Atkinson were dismissed by the District Court below pursuant to a state immunity statute. Plaintiffs' Br. at p. 44. This is untrue. The District Court below dismissed Plaintiffs' Section 1983 claims against Dr. Atkinson because she was a private actor, and therefore, not subject to liability under Section 1983. JA 81 n. 8.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250 (1988); *see also Simms v. District of Columbia*, 699 F.Supp.2d 217, 225 (D.D.C. 2010).

The law will consider a private individual a state actor when: 1) the state exercises "coercive power" or "significant encouragement" over the individual and his or her actions; 2) the state controls the individual; 3) the private individual is

31

entwined with governmental policies; or 4) a "private actor has been delegated a public function by the State." *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295–96 (2001); *see also Harvey v. Mohammed*, 841 F.Supp.2d 164, 185 (D.D.C. 2012) (holding, the three factors to determine if a private individual is a state actor are: "(1) whether there is such a close nexus between the state and the challenged action that seemingly private behavior may be fairly treated as that of the state itself; (2) whether the state has exercised coercive power or provided significant encouragement to the private action; and (3) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state.").

Dr. Atkinson's actions in the underlying child-abuse proceedings have repeatedly been determined to be insufficient to establish that a private actor is a state actor for the purposes of Section 1983 liability. *Bryant-Bruce v. Vanderbilt University, Inc.*, 974 F.Supp. 1127, 1142 (M.D. Tenn. 1997) (holding, the "mere furnishing of information [from health care providers] to state officials [in suspected child abuse cases] does not constitute a joint action sufficient to render a private citizen a state actor under Section 1983…."); *Kurtz v. Hansell*, 2021 U.S. Dist. LEXIS 56037 (S.D.N.Y. Mar. 24, 2021) (holding, a physician's reporting of suspected abuse or neglect, taking of x-rays, and follow-up reports to child

protective services do not make her a state actor for Section 1983 purposes); *Deeths v. Lucile Slater Packard Children's Hosp. at Stanford*, 2013 U.S. Dist. LEXIS 107747 (E.D. Cal. July 31, 2013) (holding, a defendant physician was not a state actor when she (1) acted as a medical expert assigned by the Center for Child Protection; and (2) acted as a member of the Severe Child Injury Response Team pursuant to the Joint Protocol).

In the present case, the District Court below properly concluded that Plaintiffs' Amended Complaint did not contain factual allegations sufficient to establish that Dr. Atkinson was a state actor. JA 81 n.1 In essence, Plaintiffs support their Section 1983 claim against Dr. Atkinson by relying solely on conclusory statements to support their theory that Dr. Atkinson was a state actor or private actor acting under color of state law (i.e. "Norrell Atkinson, acting under color of state law as conferred on [her] by the District of Columbia and/or the Federal Government"; "The acts alleged herein were committed either at the instruction of Defendant D.C. Government, with the knowledge and consent of Defendant D.C. Government, or were thereafter ratified and/or approved by Defendant D.C. Government and its various policymakers."). JA 18, 22.

However, Plaintiffs' conclusory and speculative allegations are not sufficient to establish Dr. Atkinson was a state actor or a private actor operating under the color

of state law. The only interactions Dr. Atkinson is alleged to have had with the District of Columbia are essentially: (1) making and/or furthering a report of suspected child abuse; and (2) examining and treating D.O. while Children and Family Services conducted its investigation. JA 18-22. Indeed, Plaintiffs make no allegation that Dr. Atkinson was employed by the D.C. Government, because she was not. Nor do they allege that she received funds from the D.C. Government, because she did not. Finally, Plaintiffs do not allege that Dr. Atkinson's operations and actions were compelled by the D.C. Government, because they too were not.

As such, the allegations in the Amended Complaint, even when taken as true, do not allege a sufficiently close nexus between Dr. Atkinson's actions and state action such that she can be deemed a state actor. Nor are they sufficient to establish that the role of Dr. Atkinson, as alleged, creates a joint action sufficient to render Dr. Atkinson a state actor under Section 1983. Given the foregoing, it is clear Plaintiffs' Section 1983 claim against Dr. Atkinson was properly dismissed.

## V.    ASSUMING *ARGUENDO* DR. ATKINSON WAS A PUBLIC ACTOR, SHE WOULD BE IMMUNE FROM LIABILITY PURSUANT TO THE DOCTRINE OF QUALIFIED IMMUNITY.

In dismissing Plaintiffs' Complaint against Dr. Atkinson, the trial court properly concluded that even if Dr. Atkinson were not a private actor, she would be immune from Plaintiffs' claims because she would be entitled to qualified immunity.

JA 81 n. 8. Plaintiffs aver that such a decision was in error and rely on two primary cases to support their contentions, *Richardson v. McKnight,* 521 U.S. 399, 412 (1997) and *Wyatt v. Cole,* 504 U.S. 158, 168 (1992). Plaintiffs' Br. at p. 49. However, Plaintiffs' reliance on these cases is misplaced.

In *Filarsky v. Delia,* 566 U.S. 377 (2012), the United States Supreme Court extended the scope of qualified immunity to private contractors temporarily retained by the government to carry out its work. The Court reasoned:

> Sometimes, . . . private individuals will work in close coordination with public employees and face threatened legal action for the same conduct.. . . Because government employees will often be protected from suit by some form of immunity, those working alongside them could be left holding the bag - facing full liability for actions taken in conjunction with government employees who enjoy immunity for the same activity.

*Filarsky*, 566 U.S. at 391; *see also Meadows v. Rockford Housing Authority*, 861 F.3d 672, 677-78 (7th Cir. 2017) (holding, private contractor defendants were entitled to qualified immunity because "the defendants were operating at the direct instruction of a supervising government official"); *Brewer v. Hayne*, 860 F.3d 819 (5th Cir. 2017) (holding, forensic consultants hired as retained government experts were entitled to assert, and were protected by qualified immunity).

Significantly, before even limited discovery begins, it must be found that the plaintiff's pleadings assert facts that would overcome the defense of qualified

35

immunity. *Carswell v. Camp,* 37 F.4th 1062, 1066 (5th Cir. 2022); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (stating, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). It is a plaintiff's burden to overcome a defendant's entitlement to qualified immunity. *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992).

In order for the court to resolve a government official's qualified immunity claim, a court must perform a two pronged analysis: one, it must decide whether the facts alleged by the plaintiff make out a violation of a constitutional right; and two, it must decide whether the right at issue was "clearly established" at the time of defendant's alleged conduct. *Saucier v. Katz*, 533 U.S. 194, (2001). In evaluating whether qualified immunity is applicable, the Supreme Court has held that the judicial officer(s) may exercise their discretion in deciding which prong of the qualified immunity analysis shall be evaluated first. *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009).

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Stated differently, even where an official's conduct violated a clearly established constitutional right, the official is

still entitled to qualified immunity if his or her conduct was objectively reasonable under the circumstances presented in the case. *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007).

In the present case, as noted above, it is unquestionable that Dr. Atkinson was a private individual, employed by a private entity, and was not receiving government funding to perform her work, and therefore, she is not a public actor. JA 81 n. 8. However, should this Court conclude that Dr. Atkinson was – on a temporary basis – a government employee, she would still be immune from Plaintiffs' claims for the same reasons as the D.C. Defendants and as outlined by the trial court. JA 81 n. 8. Indeed, there is no basis to argue that Dr. Atkinson acted unreasonably in light of the facts presented in this case, because it was repeatedly determined that Plaintiffs did, in fact, neglected their child. JA 83-92. Given the foregoing, it is respectfully submitted that this Court should affirm the District Court's decision.

## VI. DR. ATKINSON IS IMMUNE FROM LIABILITY AS A MANDATORY REPORTER OF SUSPECTED CHILD ABUSE OR NEGLECT.

There is no question that the District Court below appropriately granted Dr. Atkinson's Motion to Dismiss on the basis of statutory immunity regardless of whether or not the doctrine of issue preclusion bars Plaintiffs' claims. In the instant appeal, Plaintiffs contend that the District Court wrongly granted Dr. Atkinson's

37

Motion to Dismiss, because Dr. Atkinson does not qualify as a mandatory reporter under D.C. Code § 4-1321.02(a) and was not operating under good-faith as required by D.C. Code § 4-1321.04. However, these contentions are unsupported by the plain language of the law and the facts of this case.

Division I, Title 4, Chapter 13 of the D.C. Code establishes the laws regulating child abuse and neglect. D.C. Code §§ 4-1301.01 *et. seq.* The purpose of this provision is "to assure that protective services will be made available to a neglected child to protect the child and his or her siblings and to prevent further abuse or neglect; and to preserve the family life of the parents and children, to the maximum extent possible, by enhancing the parental capacity for adequate child care." D.C. Code § 4-1321.01.

Further, as noted above, D.C. Code § 4-1321.02(b), in relevant part, unambiguously states that "every physician,…[and] person involved in the care and treatment of patients" is required to report abuse or neglect. D.C. Code § 4-1321.02(b). D.C. Code § 4-1321.02(a) requires, *inter alia*, that a mandatory reporter,

> [w]ho knows or has reasonable cause to suspect that a child known to him or her in his or her professional or official capacity has been or is in immediate danger of being a mentally or physically abused or

38

> neglected child[1] . . . shall immediately report or have a report made of such knowledge or suspicion to either the Metropolitan Police Department of the District of Columbia or the Child and Family Services Agency.

D.C. Code § 4-1321.02(a).

Contrary to Plaintiffs' assertions, there is no requirement that Dr. Atkinson be a treating physician to fall under the category of a mandatory reporter. D.C. Code § 4-1321.02(a). Indeed, there is no legislative history, judicial interpretation, or legal authority to support their proposition that "any person" as used in D.C. Code § 4-1321.02(a) means anything other than all persons who work in the professions included in the statute. Plaintiffs' cannot provide such authority, because it does not exist.

Plaintiffs' position that Dr. Atkinson was not a mandatory reporter because she was a state actor is also patently incorrect. D.C. Code § 4-1321.02(a) applies to **every physician**. Thus, regardless of whether Dr. Atkinson was a state actor (she was not); she still fell under the category of mandatory reporters as defined by the statute. Such a contention is supported by even a cursory review of the list of mandatory reporters under this statute.

---

[1] The term "neglected child" is defined in D.C. Code § 16-2301(9)(A)(vi) as a child "who has received negligent treatment or maltreatment from his or her parent, guardian, or custodian."

This list of mandatory reporters includes a bevy of professions, who are almost exclusively state actors including: "Child and Family Services Agency employees, … law-enforcement officer, humane officer of any agency charged with the enforcement of animal cruelty laws, school official, teacher, athletic coach, Department of Parks and Recreation employee, public housing resident manager, [or] social service worker." D.C. Code § 4-1321.02(b). Clearly, if the D.C. City Council did not intend for state actors to be mandatory reporters, as Plaintiffs' contend, they would not have included so many state actors as mandatory reporters. Given the foregoing, it is patently clear that Plaintiffs' interpretation of D.C. Code § 4-1321.02(a) is wrong, and the District Court below properly concluded that Dr. Atkinson was a mandatory reporter.

Similarly, it is equally clear that Dr. Atkinson's mandatory reporter status affords her statutory immunity from Plaintiffs' claims. Pursuant to D.C. Code § 4-1321.04:

> [a]ny person, hospital, or institution participating in good faith in the making of a report [of suspected child abuse or neglect] pursuant to this subchapter shall have immunity from liability, civil or criminal, that might otherwise be incurred or imposed with respect to the making of the report. **Any such participation shall have the same immunity with respect to participation in any judicial proceeding involving the report.** In all civil or criminal proceedings concerning the child or resulting from the report good faith shall be presumed unless rebutted.

(Emphasis added).

In an apparent recognition of the width and breadth of the protection afforded to Dr. Atkinson by D.C. Code § 4-1321.04, Plaintiffs aver that Dr. Atkinson did not make the initial report of suspected abuse or act in good faith, and therefore, the District Court below wrongly determined that she was protected by the statute. Plaintiffs' Br. at p. 50. However, Plaintiffs' contentions are without merit as reflected below.

As an initial matter, even if Dr. Atkinson's suspicion of neglect was ultimately disproven, her reasonable belief or suspicion of child abuse and the statute's presumption of good faith afforded to her actions should be sufficient to warrant the dismissal of Plaintiffs' Amended Complaint. However, even if this were not the case, Dr. Atkinson would still be afforded immunity by the statute. Indeed, Plaintiffs' baseless allegation that Dr. Atkinson did not act in good faith is belied by the findings of the D.C. Superior Court and Court of Appeals that she was a credible witness and that her reports of child abuse and neglect were substantiated. JA 87. Indeed, as extensively outlined above, Plaintiffs were found to have abused and neglected their daughter. JA 83-92. Accordingly, Plaintiffs could not allege facts to support their claims that Dr. Atkinson acted in bad faith, because she not only acted

41

in good faith, she was ultimately proven correct. Therefore, the District Court was compelled to dismiss this Action pursuant to D.C. Code § 4-1321.04.

Concerning Plaintiffs' arguments that Dr. Atkinson should not be afforded immunity because she did not make the initial report of suspected abuse, there is no legal support for such a contention. On the contrary, the statute contains no language limiting the immunity it affords to merely the first physician who treats a child who he or she suspects was abused. D.C. Code § 4-1321.04. Instead, the operative question is whether Dr. Atkinson participated in the child-abuse investigation, which undoubtedly occurred as detailed extensively above. JA 84-87.

Given the foregoing, Dr. Atkinson's role as a physician, and therefore, a mandatory reporter of suspected child abuse and neglect, affords her statutory immunity in this case. Accordingly, the District Court below appropriately dismissed Plaintiffs' Amended Complaint, and it is respectfully submitted that this Court should affirm the District Court's decision.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the District Court below properly found that Plaintiffs' claims were barred by the doctrine of issue preclusion and D.C. Code § 4-1321.04. Accordingly, the District Court's dismissal of Plaintiffs' Amended Complaint should be affirmed.

Date: March 9, 2023              Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

*/s/ Jodi V. Terranova*
Jodi V. Terranova, Esq. (Bar No. 472225)
1500 K Street, NW, Suite 330
Washington, D.C. 20005
Tel. (202) 626-7660
Jodi.Terranova@wilsonelser.com
***Counsel for Defendant-Appellee, Norrell Atkinson, M.D.***

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 9,350 words, excluding parts of the brief exempted by Federal Rule Appellate Procedure 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(a)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface in 14-point Times New Roman.

*/s/ Jodi V. Terranova*
Jodi V. Terranova, Esq.

# STATUTORY ADDENDUM

# STATUTORY ADDENDUM
# TABLE OF CONTENTS

**Page**

D.C. Code § 16-2301 ................................................................. SA-1

## [D.C. Code § 16-2301](#)

The Official Code is current through February 22, 2023.

*District of Columbia Official Code  >  Division II. Judiciary and Judicial Procedure. (Titles 11 — 17)  >  Title 16. Particular Actions, Proceedings and Matters. (Chs. 1 — 55)  >  Chapter 23. Family Division [Family Court] Proceedings. (Subchs. I — V)  >  Subchapter I. Proceedings Regarding Delinquency, Neglect, or Need of Supervision. (§§ 16-2301 — 16-2340)*

## § 16-2301. Definitions.

As used in this subchapter —

**(1)**  The term "Division" means the Family Division of the Superior Court of the District of Columbia. Pursuant to *section 16-2301.01*, the term "Division" shall be deemed to refer to the Family Court of the Superior Court of the District of Columbia.

**(1A)**  "Family Court" means the Family Court of the Superior Court of the District of Columbia.

**(2)**  The term "judge" means a judge assigned to the Family Division of the Superior Court.

**(3)**  The term "child" means an individual who is under 18 years of age, except that the term "child" does not include an individual who is sixteen years of age or older and —

**(A)**  charged by the United States attorney with (i) murder, first degree sexual abuse, burglary in the first degree, robbery while armed, or assault with intent to commit any such offense, or (ii) an offense listed in clause (i) and any other offense properly joinable with such an offense;

**(B)**  charged with an offense referred to in subparagraph (A)(i) and convicted by plea or verdict of a lesser included offense; or

**(C)**  charged with a traffic offense.

For purposes of this subchapter the term "child" also includes a person under the age of twenty-one who is charged with an offense referred to in subparagraph (A)(i) or (C) committed before he attained the age of sixteen, or a delinquent act committed before he attained the age of eighteen.

**(4)**  The term "minor" means an individual who is under the age of twenty-one years.

**(5)**  The term "adult" means an individual who is twenty-one years of age or older.

**(6)**  The term "delinquent child" means a child who has committed a delinquent act and is in need of care or rehabilitation.

**(7)**  The term "delinquent act" means an act designated as an offense under the law of the District of Columbia, or of a State if the act occurred in a State, or under Federal law. Traffic offenses shall not be deemed delinquent acts unless committed by an individual who is under the age of sixteen.

D.C. Code § 16-2301

**(8)** The term "child in need of supervision" means a child who —

    **(A)**

        **(i)** subject to compulsory school attendance and habitually truant from school without justification;

        **(ii)** has committed an offense committable only by children; or

        **(iii)** is habitually disobedient of the reasonable and lawful commands of his parent, guardian, or other custodian and is ungovernable; and

    **(B)** is in need of care or rehabilitation.

**(9)**

    **(A)** The term "neglected child" means a child:

        **(i)** who has been abandoned or abused by his or her parent, guardian, or custodian, or whose parent, guardian, or custodian has failed to make reasonable efforts to prevent the infliction of abuse upon the child. For the purposes of this sub-subparagraph, the term "reasonable efforts" includes petitioning for a civil protection order pursuant to *§ 16-1003*, where the child is a family member, as that term is defined in *§ 16-1001*(5A);

        **(ii)** who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental, or emotional health, and the deprivation is not due to the lack of financial means of his or her parent, guardian, or custodian;

        **(iii)** whose parent, guardian, or custodian is unable to discharge his or her responsibilities to and for the child because of incarceration, hospitalization, or other physical or mental incapacity;

        **(iv)** whose parent, guardian, or custodian refuses or is unable to assume the responsibility for the child's care, control, or subsistence and the person or institution which is providing for the child states an intention to discontinue such care;

        **(v)** who is in imminent danger of being abused and another child living in the same household or under the care of the same parent, guardian, or custodian has been abused;

        **(vi)** who has received negligent treatment or maltreatment from his or her parent, guardian, or custodian;

        **(vii)** who has resided in a hospital located in the District of Columbia for at least 10 calendar days following the birth of the child, despite a medical determination that the child is ready for discharge from the hospital, and the parent, guardian, or custodian of the child has not taken any action or made any effort to maintain a parental, guardianship, or custodial relationship or contact with the child;

        **(viii)** who is born addicted or dependent on a controlled substance or has a significant presence of a controlled substance in his or her system at birth;

        **(ix)** in whose body there is a controlled substance as a direct and foreseeable consequence of the acts or omissions of the child's parent, guardian, or custodian; or

        **(x)** who is regularly exposed to illegal drug-related activity in the home.

**(B)** No child who in good faith is under treatment solely by spiritual means through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall for that reason alone be considered a neglected child for the purposes of this subchapter.

**(C)** Subparagraph (A)(viii), (ix), and (x) of this paragraph shall apply as of October 1, 2003.

**(10)** Repealed.

**(11)** Repealed.

**(12)** The term "custodian" means a person or agency, other than a parent or legal guardian:

**(A)** to whom the legal custody of a child has been granted by the order of a court;

**(B)** who is acting in loco parentis; or

**(C)** who is a day care provider or an employee of a residential facility, in the case of the placement of an abused or neglected child.

**(13)** The term "detention" means the temporary, secure custody of a child in facilities, designated by the Division, pending a final disposition of a petition.

**(14)** The term "shelter care" means the temporary care of a child in physically unrestricting facilities, designated by the Division, pending a final disposition of a petition.

**(15)** The term "detention or shelter care hearing" means a hearing to determine whether a child who is in custody should be placed or continued in detention or shelter care.

**(16)** The term "factfinding hearing" means a hearing to determine whether the allegations of a petition are true.

**(17)** The term "dispositional hearing" means a hearing, after a finding of fact, to determine —

**(A)** whether the child in a delinquency or need of supervision case is in need of care or rehabilitation and, if so, what order of disposition should be made; or

**(B)** what order of disposition should be made in a neglect case.

**(18)** The term "probation" means a legal status created by Division order following an adjudication of delinquency or need of supervision, whereby a minor is permitted to remain in the community subject to appropriate supervision and return to the Division for violation of probation at any time during the period of probation.

**(19)** The term "protective supervision" means a legal status created by Division order in neglect cases whereby a minor is permitted to remain in his home under supervision, subject to return to the Division during the period of protective supervision.

**(20)** The term "guardianship of the person of a minor" means the duty and authority to make important decisions in matters having a permanent effect on the life and development of the minor, and concern with his general welfare. It includes (but is not limited to) —

**(A)** authority to consent to marriage, enlistment in the armed forces of the United States, and major medical, surgical, or psychiatric treatment; to represent the minor in legal

# United States Court of Appeals
## for the District of Columbia Circuit

### CERTIFICATE OF SERVICE

I, Melissa Pickett, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, Attorneys for Appellee Norrell Atkinson, M.D. to print this document. I am an employee of Counsel Press.

On **March 9, 2023,** counsel has authorized me to electronically file the foregoing **Brief for Defendant-Appellee Norrell Atkinson, M.D.** with the Clerk of Court using the CM/ECF System, which will serve via e-mail, notice of such filing, to all registered as CM/ECF users. Two hard copies were sent to the following two Pro Se Appellants by U.S. Express Mail today:

| | |
|---|---|
| Stephen Ollar | Miriam Berman |
| 8401 Farrell Drive | 8401 Farrell Drive |
| Chevy Chase MD 20815 | Chevy Chase MD 20815 |
| 907-382-7675 | (703) 282-8384 |
| stephenpollar@gmail.com | mimsberman@yahoo.com |

Unless otherwise noted, 8 paper copies have been filed with the Court by U.S. Express Mail within the time permitted by rule.

**March 9, 2023**

/s/ Melissa Pickett
Melissa Pickett
Counsel Press